```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/29/15
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CIRILO RODRIGUEZ individually and as president
of SHIPPY REALTY CORPORATION and as a
member of SUNDOWN BALDWIN LLC and,

                     Plaintiff,

   -against-

VILLAGE OF SLEEPY HOLLOW, JOY S.
JOSEPH, MARTIN GOTTE, GREGORY J. CAMP,
JOHN DOE #1, JOHN DOE #2, JOHN DOE #3,
JOHN DOE #4, JOHN DOE #5, in their Individual
and Personal Capacities,

                     Defendants.

13-CV-8465 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiffs[1] Cirilo Rodriguez ("Rodriguez") and Shippy Realty Corporation ("Shippy Realty") (collectively, "Plaintiffs") bring this action pursuant to 42 U.S.C. § 1983 ("§ 1983") and New York state law against Defendants the Village of Sleepy Hollow ("the Village"), Village Prosecutor Joy S. Joseph ("Joseph"), Code Enforcement Officer Martin Gotte ("Gotte"), Chief of Police Gregory J. Camp ("Chief Camp"), and John Does 1-5 (collectively, "Defendants") for malicious prosecution, abuse of process, selective prosecution, and defamation, as well as related state law claims. Defendants now move to dismiss Plaintiff's Amended Complaint,[2] pursuant to

---

[1] The Amended Complaint in this case is somewhat ambiguously drafted as to the number of plaintiffs involved. The parties have stipulated that the Complaint alleges claims on behalf of two plaintiffs—Rodriguez and Shippy Realty. (*See* ECF No. 39.)

[2] Plaintiff filed his initial Complaint on November 26, 2013. At a pre-motion conference on March 4, 2014, Plaintiff was granted leave to file an Amended Complaint naming additional defendants by April 4, 2014. (*See* Minute Entry for March 4, 2014, Pre-Motion Conference.) Plaintiff electronically filed his Amended Complaint on April 4, 2014, in accordance with the schedule set forth by this Court at the March 4 conference, but a filing error occurred and Plaintiff's counsel was sent notice that the Amended Complaint needed to be re-filed. (*See* ECF No. 10.) Plaintiff's counsel did not re-file the Amended Complaint until June 24, 2015. (*See* Am. Compl., ECF No. 33.) The Amended Complaint that was filed on June 24, 2015, however, did not match the original Amended Complaint. (*Compare* ECF No. 33 *and* ECF No. 10.) The Court asked the parties to confer and determine how they wished to

Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment pursuant to Rules 12(d) and 56. For the following reasons, Defendants' motion is GRANTED.

## BACKGROUND

The facts are gleaned from the Amended Complaint, affidavits, and exhibits submitted with this motion and are not in dispute, except where noted.

**I.      196 Cortlandt Street**

Rodriguez is the president of Shippy Realty, the owner of record for the property located at 196 Cortlandt Street ("196 Cortlandt Street"). (Am. Compl. ¶ 6; Rodriguez Aff. ¶ 3.) On June 13, 2012, Defendant Gotte issued an appearance ticket to Rodriguez dated February 2, 2012, relating to a property maintenance code violation for 196 Cortlandt Street. (Rodriguez Aff. ¶ 4.) On June 28, 2012, Rodriguez appeared in the Sleepy Hollow Justice Court ("Village Court") and entered a "not guilty" plea on behalf of himself and Shippy Realty. (Rodriguez Aff. ¶ 5.) Defendant Joseph had not filed a formal accusatory instrument at that time. (Rodriguez Aff. ¶ 5.) Soon after, Rodriguez received six more appearance tickets for various maintenance code violations, all issued by Defendant Gotte and dated February 2, 2012. (Rodriguez Aff. ¶¶ 6-7.) On July 12, 2012, Rodriguez again appeared in the Village Court to enter a "not guilty" plea on behalf of himself and Shippy Realty, even though Defendant Joseph had again failed to file a formal accusatory instrument. (Rodriguez Aff. ¶¶ 9-10.) In total, Rodriguez received seven tickets for: (1) failure to properly secure the exterior rear siding, (2) failure to have handrails on the rear stairs, (3) failure to keep windows in weather-tight condition, (4) failure to protect the chimney from the elements, (5) failure to keep the plumbing stack free of leaks and defects, (6)

---

proceed. After the parties conferred, Plaintiff re-filed the original Amended Complaint (*see* ECF No. 38), and the parties stipulated that this was the operative complaint and that the motion to dismiss that had been previously filed by Defendants was responsive to the now-operative Amended Complaint (*see* ECF No. 39, 40). The only defendant added in the Amended Complaint is Gotte, who joined in the Defendants' motion to dismiss and the stipulation.

holes in rear of the building, and (7) the caved-in rear foundation. (*See* Rodriguez Aff. Ex. 1.) Plaintiffs allege that the Village has a practice of prosecuting municipal code violations and obtaining convictions without filing accusatory instruments or advising defendants of their right to an attorney. (Am. Compl. ¶ 35; Rodriguez Aff. ¶¶ 11-12.)

On October 2, 2012, Rodriguez filed a motion to dismiss the appearance tickets based on the Village's failure to file sufficient accusatory instruments and on the grounds that he did not own 196 Cortlandt Street. (Am. Compl. ¶¶ 34-38; Rodriguez Aff. ¶ 15.) In an oral opinion, Judge Valdespino, the Village Justice presiding over the case, dismissed the case against Rodriguez because he was not the owner of record; however, he allowed the case against Shippy Realty to continue. (Am. Compl. ¶ 40; Rodriguez Aff. ¶ 15.) Following Rodriguez's move for recusal of Judge Valdespino and disqualification of Defendant Joseph for unethical conduct, the Village Court reassigned the case to Acting Village Justice Alfred A. Farella and Acting Village Prosecutor Anthony Mamo. (Am. Compl. ¶ 45; Rodriguez Aff. ¶ 19.)

On September 25, 2013, a conference was held after Rodriguez filed a motion seeking reargument. (Rodriguez Aff. ¶ 20.) The parties disagree as to the nature of this conference; while Defendants allege it was a settlement conference (Mamo Aff. ¶¶ 2-4), Plaintiffs contend it was a motion conference during which the parties did not stipulate any agreement (Rodriguez Aff. ¶¶ 22-27).  Rodriguez did not acknowledge any violations of municipal codes at 196 Cortlandt Street, but he agreed to address certain concerns identified by a representative of the Building Department. (Rodriguez Aff. ¶¶ 25-27.) On October 21, 2013, Judge Farella dismissed the case after the Building Department advised the prosecution that their concerns had been resolved. (Rodriguez Aff. ¶ 29; Mamo Aff. ¶ 5.)

3

**II.     170 Cortlandt Street**

On November 20, 2013 Defendant Gotte saw a worker operating a blow torch on the roof of the property located at 170 Cortlandt Street ("170 Cortlandt Street") and asked permission from the men inside the building to observe their work. (Miranda Decl. Ex. J (Gotte Aff. at ¶¶ 2-3).) Afterward, Gotte issued appearance tickets to Rodriguez regarding violations at 170 Cortlandt Street for: (1) conducting roofing work without a permit, (2) using a propane torch for roofing work without a permit or taking proper safety precautions, (3) using two portable unvented heaters against code, (4) not properly securing three propane cylinders, (5) not installing a sign for the storage of propane, (6) improperly hooking up wires to an extension cord without a plug, and (7) not supplying a fire extinguisher on each floor or on the roof while working. (Miranda Decl. Ex. H.)

At 12:45 p.m. on November 20, 2013, a fire erupted on the roof the building located at 172 Cortlandt Street. (*See* Miranda Decl. Ex. L (Sleepy Hollow Police Dep't Press Release).) A report by the Westchester County Arson Task Force ("Arson Task Force") ruled the fire accidental:

> Upon arrival F.D. observed fire on the D side of 172 Cortlandt St. Found fire developing in cockloft space & ceiling of Apt. 3. Scene exam revealed hot roof working by roofers on the roof of #170 Cortlandt St. Work was located 48" from the roof & edge of #172. Roofers were using a LPG torch for roof patch. Fire determined accidental Torch too close to combustibles.

(Miranda Decl. Ex. K.) On December 2, 2013, Gotte served Rodriguez with the appearance tickets from November 20, 2013. (Rodriguez Aff. ¶ 31.)

On December 18, 2013, Rodriguez filed a motion to dismiss the appearance tickets. (Rodriguez Aff. ¶ 34.) The Village Court dismissed the charges against Rodriguez on January 21, 2014, because he was not the record property owner. (Rodriguez Aff. ¶ 34.) Plaintiff is a

4

member of Sundown Baldwin LLC ("Sundown"), which owns and operates 170 Cortlandt Street. (Am. Compl. ¶¶ 9, 11; Rodriguez Aff. ¶ 30.)

## APPLICABLE STANDARDS ON THE INSTANT MOTION

### I.     Motions to Dismiss and Rule 12(d)

When ruling on a motion to dismiss for failure to make a claim under Rule 12(b)(6), a "court may consider the facts as asserted within the four corners of the complaint together with the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal quotation and citation omitted). Courts may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

However, when movants include documents on a motion to dismiss that fall outside of these categories, "a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (internal quotations omitted).

Under Rule 12(d), when "matters outside the pleadings are presented to and not excluded by the court," a motion to dismiss "must be treated as one for summary judgment," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). A district court thus acts properly in converting a motion to dismiss into a motion for summary judgment when the motion presents matters outside the pleadings, provided that the Court has afforded "sufficient notice to an opposing party and an opportunity for that party to respond." *Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d

Cir. 1995). Formal notice is not ordinarily required when a party "should reasonably have recognized the possibility that the motion might be converted into one for summary judgment [and] was [neither] taken by surprise [nor] deprived of a reasonable opportunity to meet facts outside the pleadings." *Villante v. Dep't of Corrections of City of New York*, 786 F.2d 516, 521 (2d Cir. 1986) (internal quotation marks omitted) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir. 1985)); *see Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009).

Here, Defendants have presented matters outside the pleadings in the form of affidavits, tickets, documents from cases involving Plaintiffs and/or Sundown in the Village Court, transcripts, administrative documents, Arson Task Force reports, Grievance Committee determinations, and copies of local laws. Plaintiffs were timely apprised of the possibility that Defendants' motion could be treated as a motion for summary judgment and have also presented supporting material beyond the pleadings. Thus, the Court treats the instant motion as one seeking summary judgment.

## II.   Summary Judgment and Rule 56

Rule 56, which governs motions for summary judgment, provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Gen. Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. 2009).

The moving party bears the initial burden of pointing to evidence in the record "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may also meet its burden by demonstrating that the "adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P.

6

56(c)(1)(B). By using a memorandum or brief to point to an absence of evidence, the moving party may "shift to the nonmovant the obligation to come forward with admissible evidence supporting its claim." *Fuertado v. City of New York*, 337 F. Supp. 2d 593, 599 (S.D.N.Y. 2004).

Once the moving party fulfills its initial burden, the burden shifts to the nonmoving party to prove or raise the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1)(A). A party alleging that a material fact is genuinely disputed must identify "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. The nonmoving party must support its assertion by "citing to particular parts of materials in the records" or "showing that the materials cited to do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Accordingly, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999); *see also F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998))). Summary judgment should be granted when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In reviewing the record, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial." *Anderson*, 477 U.S. at 250. Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," nor is it to determine a witness' credibility. *Id.* at 249. Rather, courts must "constru[e] the evidence in the light most

favorable to the non-moving party and draw[ ] all reasonable inferences in its favor" when deciding whether a genuine issue of material fact exists. *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (quoting *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005)).

## DISCUSSION

### I.      Section 1983 Malicious Prosecution Claims

Plaintiffs allege several malicious prosecution claims pursuant to § 1983 (the first, seventh, thirteenth, and fourteenth causes of action in the Amended Complaint) against various Defendants. (*See* Am. Compl. ¶¶ 54-66, 79-85, 104-129)

In a malicious prosecution claim under § 1983, "a plaintiff must demonstrate conduct by the defendant [1] that is tortious under state law and [2] that results in a constitutionally cognizable deprivation of liberty." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003). In order to establish a malicious prosecution claim under New York law, a plaintiff must prove "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Id.*; *see Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010); *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 198 (2d Cir. 2014).

#### A.      Fourth Amendment Seizure

Malicious prosecution claims under § 1983 seek to vindicate the Fourth Amendment's protection against unlawful seizure. *See Albright v. Oliver*, 510 U.S. 266, 271-74 (1994). The Second Circuit has held that "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010); *cf. Swartz v. Insogna*, 704 F.3d 105,

8

109-10 (2d Cir. 2013) ("We have consistently held that a *post-arraignment* defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance is required' suffers a Fourth Amendment deprivation of liberty.") (emphasis added). Here, Defendants issued multiple non-felony appearance tickets, but Plaintiffs do not allege any arrest or other physical detention. (*See* Am. Compl. ¶ 26.) While the Court in *Burg* noted that "the number of [court] appearances may bear upon whether there was a [Fourth Amendment] seizure," 591 F.3d at 98, courts in this circuit have largely found that plaintiffs charged with *non-felony offenses* who were "neither arraigned nor physically detained but who might have made a number of court appearances" did not suffer a constitutional injury. *Dellutri v. Elmsford*, 895 F. Supp. 2d 555, 571 (S.D.N.Y. 2012) (collecting cases); s*ee Parkash v. Town of Southeast*, No. 10 Civ. 8098, 2011 WL 5142669, at *15-16 (S.D.N.Y. Sept. 30, 2011), *aff'd*, 468 F. App'x. 80 (2d Cir. 2012) (finding no Fourth Amendment seizure where the plaintiff was required to appear in court on fifteen occasions but no further restrictions occurred); *Mangino v. Inc. Village of Patchoque*, 739 F. Supp. 2d 205, 228 (E.D.N.Y. 2010) (finding no seizure where multiple appearance tickets for plaintiffs' non-compliance with the town's rental permit statute required multiple court appearances); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 370 (S.D.N.Y. 2009) (finding no seizure where plaintiff had not been detained after she had been "issued appearance tickets to appear in Town Justice Court to answer misdemeanor charges of violations of the Town's Zoning Laws"). Plaintiffs' tickets and five court appearances for 196 Cortlandt Street and single court appearance for 170 Cortlandt Street do not rise to the level of a Fourth Amendment seizure. (Rodriguez Aff. ¶¶ 22, 29, 33.)

Plaintiffs also aver that a disagreement remains as to "the circumstances under which defendant Gotte entered and took pictures at the [*sic*] 196 Cortlandt Street and 170 Cortlandt

Street," and that Gotte's alleged entrance onto the properties constituted a seizure under the Fourth Amendment that would allow Plaintiffs to sustain their malicious prosecution claims. (Pls.' Mem. of Law Opp. Defs.' Mot. Dismiss at 19.) The Supreme Court has held that a Fourth Amendment seizure does not occur "unless 'the individual manifested a subjective expectation of privacy in the object of the challenged search,' and 'society [is] willing to recognize that expectation as reasonable.'" *Kyllo v. U.S.*, 533 U.S. 27, 33 (2001) (alteration in original) (quoting *Cal. v. Ciraolo*, 476 U.S. 207, 211 (1986)).

"The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *See v. Seattle*, 387 U.S. 541, 543 (1967); *see N.Y. v. Burger*, 482 U.S. 691, 699 (1987); *U.S. v. Chopra*, No. 12-308A, 2014 WL 6810564, at *14 (W.D.N.Y. Dec. 2, 2014). However, a solely "visual observation is no 'search' at all," as "Fourth Amendment protection . . . has never been extended to require law enforcement officers to shield their eyes when passing . . . on public thoroughfares." *Kyllo*, 533 U.S. at 32 (quoting *Ciraolo*, 476 U.S. at 213); *see also Ariz. v. Hicks*, 480 U.S. 321, 328 (1987) ("A truly cursory inspection–one that involves merely looking at what is already exposed to view, without disturbing it–is not a 'search' for Fourth Amendment purposes, and therefore does not even require reasonable suspicion.").

In the case of the tickets relating to 196 Cortlandt Street, all of the violations alleged in the tickets were exterior violations that could be seen without entering the building. (*See* Rodriguez Aff. Ex. 1.) An inspection that involves "merely looking at what is already exposed to view . . . is not a 'search' for Fourth Amendment purposes." *Hicks*, 480 U.S. at 328. As the tickets issued by Defendant Gotte for 196 Cortlandt Street were based on visual assessments made from outside the building, no Fourth Amendment seizure occurred.

An open question remains, however, regarding whether Defendant Gotte's entrance into 170 Cortlandt Street constituted a seizure under the Fourth Amendment. Gotte was walking in the Village when he saw a worker operating a blow torch on the roof of 170 Cortlandt Street. (*See* Miranda Decl. Ex. J (Gotte Aff. ¶ 2; Aff. Opp. Mot. to Dismiss at 3).) Upon learning that Plaintiff's building permits did not include the use of a blow torch on the roof, Defendant Gotte asked permission from the men inside the building to observe their work. (*See* Miranda Decl. Ex. J at (Gotte Aff. ¶ 3; Aff. Opp. Mot. to Dismiss at 3).) The Village Code states that the "Building Inspector . . . shall be authorized to enter any structure or premises at any reasonable time, upon display of proper identification." Sleepy Hollow, N.Y., Code § 245-80.[3] If permission to enter is not obtained from the "owner, occupant, or operator," a warrant may be obtained with "reasonable or probable cause." *Id.* § 245-80(A). The Building Inspector may also enter the premises in case of an emergency without a warrant or permission. *Id.* § 245-80(B). In the instant case, Gotte received permission from the men working inside the building. The workers in the building, however, were not the building's owners, occupants, or operators and thus may not have been capable of authorizing Gotte's entry.[4] Neither side provides evidence as to whether the workers had authorization to allow people into the building. Furthermore, Defendant Gotte entered the building prior to the fire on 172 Cortlandt Street, so he did not enter the premises in response to an emergency situation. As such, the record as presented is insufficient to determine

---

[3] This code section concerns residential buildings. While Plaintiffs never expressly state that 170 Cortlandt Street is a residential building, the Court can infer this fact from the permits issued for 170 Cortlandt Street allowing "INTERIOR ALTERATIONS TO THREE APARTMENTS" in Building Permit Number 2013-0387-B, "PLUMBING WORK FOR APARTMENT RENOVATIONS" in Plumbing Permit Number 2013-0111-P, and "ELECTRICAL WORK FOR APARTMENT RENOVATIONS" in Electrical Permit Number 2013-0135-E. (*See* Miranda Decl. Ex I.)

[4] The Village Code does not define "operator" or establish a source to define terms. However, the Fire Code of N.Y. State, which shares its definitions with the Building Code of N.Y. State, establishes Webster's Dictionary as providing ordinarily accepted meanings. 2007 Fire Code of N.Y. State § 201.4. The Webster's Dictionary definition for operator is "a person who uses and controls something (such as a machine, device, or business)." "Operator," *Merriam-Webster's Dictionary*, *available at* http://www.merriam-webster.com/dictionary/operator.

whether Defendant Gotte had the proper authorization required to effect a legal search of the premises without a warrant. His entrance into the building and subsequent observations may amount to a Fourth Amendment seizure.

### B. *Probable Cause*

While a question of fact regarding the existence of a Fourth Amendment seizure at 170 Cortlandt Street remains, the malicious prosecution claim still fails because Defendants had probable cause to issue and prosecute the tickets. Probable cause is a complete defense to any action for malicious prosecution in New York. *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010). In such a claim, the existence of probable cause turns on "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant" in the disputed matter. *Bernshtein v. City of New York*, 496 Fed. App'x 140, 142 (2d Cir. 2012) (quoting *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994)); *see Colon v. City of New York*, 468 N.Y.S.2d 453, 455 (1983).

Defendant Gotte issued the appearance tickets regarding violations at 170 Cortlandt Street on November 20, 2013, for infractions incurred due to the construction taking place on the roof of the building. (*See* Miranda Decl. Ex. H.) Those infractions included the lack of safety precautions relating to the possible ignition of a fire. (*See* Miranda Decl. Ex. H.) Gotte witnessed at least one of those infractions, operating a propane torch for work on a roof without a permit, from a public throughway. (Miranda Decl. Ex. J (Gotte Aff. ¶ 3; Aff. Opp. Mot. to Dismiss at 3).) That same day, a fire ignited on the roof of the next building, and the Arson Task Force declared that the fire was accidentally caused by a roofing torch on 170 Cortlandt Street. (*See* Miranda Decl. Ex. K.) The appearance tickets were based on Fire and Maintenance Code violations that resulted in the very dangers such regulations aim to avoid.

Defendants had probable cause to prosecute not only Sundown, the record owner of the property, but also Rodriguez. While Plaintiffs declare that Rodriguez is not the owner of 170 Cortlandt Street and thus should not be held liable for the code violations, the New York Penal code states that "[a] person is criminally liable for conduct constituting an offense which he performs or causes to be performed in the name of or in behalf of a corporation to the same extent as if such conduct were performed in his own name or behalf." N.Y. Penal Law § 20.25. As a corporation can only act through its officers and other individuals who act on its behalf, "a corporate officer cannot escape individual criminal liability for violations of the law." *People v. Premier House*, 662 N.Y.S.2d 1006, 1009 (Crim. Ct. 1997); *see generally People v. Byrne*, 77 N.Y.2d 460 (1991). In cases of building or fire code violations, being an active manager and shareholder is not sufficient for an individual to "shield[] himself from culpability for omission to take safety precautions necessary for the welfare of the buildings' . . . residents and visitors, the occupants of neighboring structures, . . . and others within the range of danger." *People v. Sakow*, 45 N.Y.2d 131, 135-36 (1978) (collecting cases). Here, Rodriguez admits that he is a member of Sundown, the deed owner of 170 Cortlandt Street. (Am. Compl. ¶¶ 9, 11; Rodriguez Aff. ¶ 30.) Additionally, Rodriguez is "authorized to apply for and receive building permits for the [corporation]." (Miranda Decl. Ex. J (Samuel L. Newman letter).) Under the circumstances, Defendants had probable cause to prosecute both Rodriguez and Sundown.

The malicious prosecution claims as to 170 Cortlandt Street and 196 Cortlandt Street must be dismissed for failure to establish a Fourth Amendment seizure. Even if a Fourth Amendment seizure occurred when Defendant Gotte entered 170 Cortlandt Street, the malicious prosecution claim as to that property must be dismissed because Rodriguez fails to demonstrate that Defendants lacked probable cause to prosecute him.

## II.   Section 1983 Abuse of Process Claims

Plaintiffs allege several claims pursuant to § 1983 for abuse of process (the second, eighth, thirteenth, and fifteenth causes of action in the Amended Complaint) against the various individual Defendants. (*See* Am. Compl. ¶¶ 61-62, 86-87, 104-122, 130-131.).

A claim for malicious abuse of criminal process "alleges a deprivation of a federal right [of procedural due process] and may be asserted under section 1983." *Hoffman v. Town of Southampton*, 523 F. App'x 770, 771 (2d Cir. 2013). In order to establish a claim under New York law, a plaintiff must demonstrate that a defendant "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

Plaintiffs allege that Defendants issued and prosecuted the tickets "to go after and punish [Plaintiffs] for, among other reasons, political retribution." (Am. Compl. ¶¶ 32, 107.) In January 2012, the Democratic Party of the Village of Sleepy Hollow held a caucus to select candidates for the Sleepy Hollow Board of Trustees, and Rodriguez arrived with others to challenge the proposed candidates. (Am. Compl. ¶ 24; Rodriguez Aff. ¶ 36.) However, he alleges that Village Attorney Janet Gandolfo, Chair of the local Democratic Party, locked the doors to the meeting and did not allow the group to sign in because they had arrived too late to participate in the caucus. (Am. Compl. ¶ 24; *see* Rodriguez Aff. ¶ 36.) Janet Gandolfo told Rodriguez, "[D]on't worry Mr. Rodriguez, sooner or later I'm going to get you." (Rodriguez Aff. ¶ 36.) This incident appears to form the underlying basis for Rodriguez's allegations of political retribution.

"[T]o state a claim for abuse of criminal process, it is not sufficient for a plaintiff to allege that the defendant were seeking to retaliate against him by pursuing his arrest and

14

prosecution." *Savino*, 331 F.3d at 77. Rather, a plaintiff "must claim that [defendants] aimed to achieve a collateral purpose *beyond or in addition to* his criminal prosecution." *Id.* (emphasis added). Furthermore, "retaliation for some offense will not suffice as a collateral motive" in an abuse of process claim. *Coleman v. N.Y.C.*, 585 F. App'x 787, 788 (2d Cir. 2014). Simple malicious motive will likewise fail as a collateral motive. *Hoffman*, 523 F. App'x at 771; *see Hauser v. Bartow*, 273 N.Y. 370, 374 (1937) ("It is not enough that the actor have an ulterior motive in using the process of the court. . . . If he uses the process of the court for its proper purpose, though there is malice in his heart, there is no abuse of the process."). Plaintiffs fail to state that Defendants had any collateral intent to issue and prosecute the appearance tickets beyond political retribution. As retaliation does not suffice as a collateral motive, Plaintiffs fail to establish the third element of an abuse of process claim, and further analysis into the first and second elements is unnecessary. Plaintiffs' inability to establish a collateral objective requires dismissal of their abuse of process claims.

### III.    Section 1983 Selective Prosecution and Defamation Claims

Plaintiffs concede their inability to proceed on the "remaining causes of action set forth in the Amended Complaint," and set forth no evidence to counter Defendants' submissions. (*See* Pls.' Mem. of Law Opp. Defs.' Mot. Dismiss at 24.) Because Plaintiffs have failed to raise any issues of material fact from which a reasonable jury could find for Plaintiffs on any of their claims, the selective prosecution and defamation claims arising under § 1983 are dismissed.

### IV.    The Village and *Monell* Liability

A local government may only be sued under § 1983 "when execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Therefore, any § 1983 claim against a municipal entity must be premised upon the theory

that the municipal actor's unconstitutional actions "were performed pursuant to a municipal policy or custom." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004).

*Monell*, however, "does not provide a separate cause of action . . . [instead] it *extends* liability to a municipal organization where that organization's . . . policies[,] or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original). Because all of Plaintiffs' underlying § 1983 claims fail, Plaintiffs' *Monell* claim also fails and must be dismissed.

## V. State Law Claims

Finally, Plaintiffs assert several state law claims for malicious prosecution, abuse of process, defamation, *respondeat superior* liability (as against the Village), and various violations of the NY state constitution against Defendants.

"The district court may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Dilaura v. Power Auth. of N.Y.*, 982 F.2d 73, 80 (2d Cir. 1992).

This appears to be the usual case. Having dismissed all of Plaintiffs' federal claims at this early stage of the litigation, and seeing no contrary argument or authority that might compel the Court to retain jurisdiction, the Court declines to exercise jurisdiction over any pendent state claims. *See Chenensky v. N.Y. Life Ins. Co.*, 942 F. Supp. 2d 388, 396 (S.D.N.Y. 2013), *appeal withdrawn* (Aug. 16, 2013).

## CONCLUSION

For the foregoing reasons, summary judgment is GRANTED in Defendants' favor, and Plaintiffs' claims are dismissed in accordance with this Opinion.[5] The Clerk of Court is respectfully directed to terminate the motion at ECF No. 28, and to close this case.

Dated: July 29, 2015
       White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

---

[5] As the Court did not reach the merits of Plaintiffs' state law claims, the state law claims are dismissed without prejudice.

17